IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDRE LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 18 CV 4502 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| RANDY PFISTER, | ) | |
| WALTER NICHOLSON, | ) | |
| DOE 3, and DOE 4, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| LYDIA DOE, and | ) | |
| MICHELLE DOE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Andre Lewis is a prisoner in the custody of Stateville Correctional Center,
Illinois. He sued Stateville's former warden—Randy Pfister—and Stateville's current warden,
Walter Nicholson. Plaintiff claims that Pfister and Nicholson deprived him of his constitutional
rights, 42 U.S.C. § 1983, by subjecting him to unsanitary living conditions.

After this court recruited counsel, plaintiff amended his complaint. In his amended
complaint, he adds section 1983 claims against Wexford Health Sources, Inc., and two
physician's assistants employed by Wexford—Michelle Doe and Lydia Doe. He claims that
Michelle and Lydia gave him unconstitutionally deficient medical care. Michelle allegedly
refused to treat his ear pain over several days. Lydia allegedly examined his left ear and extracted

a dead cockroach. Then she allegedly offered neither medication nor a referral to a doctor for further treatment. Plaintiff alleges that as a result, he permanently lost hearing in his left ear.

Defendants move for summary judgment. They argue that plaintiff failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act, prisoners must exhaust administrative remedies "as are available" before suing about prison conditions. 42 U.S.C. § 1997e(a). Lack of exhaustion is an affirmative defense that defendants must prove. Jones v. Bock, 549 U.S. 199, 216 (2007). Whether a defendant has proven lack of exhaustion is a question for the court. Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015), discussing Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008). When material facts are genuinely disputed, the court must hold an evidentiary hearing. Roberts v. Neal, 745 F.3d 232, 234 (7th Cir. 2014).

Defendants argue that plaintiff failed to exhaust his administrative remedies because: (1) plaintiff did not timely grieve his living conditions; (2) plaintiff's living conditions grievance named neither defendant Pfister nor defendant Nicholson; and (3) plaintiff's living conditions grievance did not complain about Wexford's medical care. Each argument fails.

**1      Has plaintiff failed to exhaust because he untimely grieved his living conditions?**

The "boundaries of proper exhaustion" are defined by the prison's grievance procedure. Jones, 549 U.S. at 218. Because Stateville is an Illinois Department of Corrections facility, its grievance procedure is governed by Illinois's Administrative Code. 20 Ill. Admin. Code § 504.800. Under the administrative code, once a prisoner discovers the facts giving rise to a grievance, the prisoner has 60 days to file. Id. at § 504.810(a).

Plaintiff was transferred to his housing unit in February 2017. In October—eight months later—he grieved his living conditions. He wrote that as a result of spiders in his bed, dust and spiderwebs on his cell walls, bird droppings in the chow hall, and cockroaches in the water

supply, "I have begun to have headaches and chest pains . . . ." Those "hazardous conditions,"
plaintiff wrote, "are [a]ffecting me in bad way."

Defendants argue that plaintiff untimely grieved his living conditions. As discussed below, plaintiff's October 2017 living conditions grievance exhausted his administrative remedies for two independent reasons: (1) he grieved a continuing violation of his rights; and (2) his grievance was, in fact, timely filed—or at least defendants (who have the burden of proof) offer no evidence to the contrary.

### 1.1     Continuing violation

First, plaintiff grieved a continuing violation of his rights. He wrote in the present continuous tense: his living conditions "are [a]ffecting" him. Those conditions had "begun" to cause "headaches" and "chest pains." As this court has held before, a prisoner's grievance about a continuing violation "reach[s] not only forward, but also backwards for exhaustion purposes, to conduct that technically occurred outside the grievance procedure's deadline." Loza v. Josephson, No. 16 C 8111, 2018 WL 4095097, at *4 (N.D. Ill. Aug. 28, 2018) (Gettleman, J.) (applying the continuing violation doctrine and denying summary judgment for lack of exhaustion), discussing Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013) (holding that an Illinois prisoner's February 2009 grievance "was likely sufficient to exhaust all [his] complaints" about excessive lockdowns, including lockdowns that happened in November 2008). Under Turley, plaintiff exhausted his administrative remedies—even if his grievance was untimely.

### 1.2     Timeliness

Nor is it clear that plaintiff's grievance was even untimely. His grievance suggests that his medical problems began within 60 days of filing. Stateville's grievance officer and administrative review board assumed that the 60-day clock started running when plaintiff arrived

in his housing unit. They apparently thought that if Stateville's conditions were grotesque, they were grotesque on day one.

Defendants understandably offer no evidence for that disturbing assumption. And even if it were true, the administrative code starts the clock only when plaintiff "discovered" his medical issues. 20 Ill. Admin. Code § 504.810(a). Plaintiff wrote in his grievance that, "I <u>have begun</u> to have headaches and chest pains" (emphasis added). Medical issues that "have begun" might have begun recently—perhaps only in the last 60 days, despite preexisting foul living conditions.

Plaintiff's grievance thus raises an inference that he timely grieved his medical issues. True, he did not say what date he started to have headaches and chest pains. But the administrative code did not require him to plead dates—and prisoners need not exhaust "procedures they have not been told about." <u>King v. McCarty</u>, 781 F.3d 889, 896 (7th Cir. 2015); <u>see also</u> <u>Lanaghan v. Koch</u>, 902 F.3d 683, 689–90 (7th Cir. 2018) ("A secret grievance procedure is no procedure at all . . . ."). And if Stateville's officials had wanted dates, they could have asked. There is no evidence that they did so. In fact, the administrative review board left unchecked a box that would have told plaintiff, "Provide dates when incidents occurred." The board instead told plaintiff that his grievance was "Not submitted in the timeframe outlined . . . therefore, this issue will not be addressed further."

The administrative review board's summary rejection of plaintiff's grievance as untimely raises serious questions about whether administrative remedies were "available" to plaintiff. 42 U.S.C. § 1997e(a); <u>Hernandez v. Dart</u>, 814 F.3d 836, 842 (7th Cir. 2016) (citing cases). If the board found plaintiff's grievance untimely because he did not say when his headaches and chest pains began, the board impermissibly "created a secret supplement to the state's administrative code." <u>Hurst v. Hantke</u>, 634 F.3d 409, 411 (7th Cir. 2011). And if the board read plaintiff's

grievance to exclude the possibility that his headaches and chest pains began in the last 60 days, the board did so unfairly or arbitrarily. See Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement . . . ."); Curtis v. Timberlake, 436 F.3d 709, 712 (7th Cir. 2005) (rejecting an argument that prisoners "fail[ ] to exhaust as a matter of law any time prison officials decide to assert noncompliance with a written grievance procedure"); cf. Hoeft v. Wisher, 181 F. App'x 549, 550 (7th Cir. 2006) (unpublished) ("As long as the state's application of its own procedural rules is not arbitrary or capricious, we will not substitute our judgment for the state's.").

Either way, the court finds that plaintiff exhausted the administrative remedies available to him. No evidentiary hearing is needed. First, defendants have not requested one. It was their burden to prove lack of exhaustion; they tried to do so on the papers and fell short. Second, the undisputed facts show that plaintiff grieved a violation of his rights that was continuing. That satisfies exhaustion under Turley, 729 F.3d at 650 (7th Cir. 2013), making an evidentiary hearing unnecessary.

**2      Has plaintiff failed to exhaust because he named neither Pfister nor Nicholson?**

Next, defendants Randy Pfister and Walter Nicholson argue that plaintiff failed to exhaust because plaintiff's grievances name neither Pfister—the former warden—nor Nicholson, the current warden. Plaintiff needed to write the "name of each person . . . involved in the complaint." 20 Ill. Admin. Code § 504.810(b). He did not do so. And if plaintiff did not know someone's name, he had to "include as much descriptive information about the individual as possible." Id. He did not do that either.

Despite plaintiff's failure to name Pfister and Nicholson, neither the grievance officer nor the administrative review board "explicitly relied on that shortcoming." Conyers v. Abitz, 416

F.3d 580, 585 (7th Cir. 2005). The grievance officer summarized plaintiff's grievance and the inmate's counselor's response to the merits of plaintiff's complaints. The officer then (in a single sentence) recommended denying the grievance as untimely. The administrative officer concurred. So did the board. None of them wrote a word about plaintiff's failure to name Pfister or Nicholson—or anyone else. Their decisions not to invoke a state procedural rule relieves plaintiff from having to comply with it. Id. ("[A] procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming."); see also Maddox v. Love, 655 F.3d 709, 722 (7th Cir. 2011); Ford v. Johnson, 362 F.3d 395, 397–98 (7th Cir. 2004).

Also, plaintiff's grievance "served its function by providing prison officials a fair opportunity to address his complaint." Maddox, 655 F.3d at 722. Plaintiff's grievance was detailed. He wrote about the fan in his cell house ("[f]ull of dust"), the first entrance to the chow hall ("piles of bird feces . . . stuck the[re] [a]ll along the gate"), the second entrance ("waste stuck there too"), his bunk bed ("[f]ound a spider climbing up the side"), and the slide on which he puts his food trays ("always roaches alive or dead on the tray slide"). These complaints gave Pfister and Nicholson a fair opportunity to address plaintiff's grievance. Each admits that he was the warden "at or around the times relevant" to plaintiff's suit. That Pfister had notice is especially clear. Below the grievance officer's recommendation to deny plaintiff's grievance, in a section labeled "Chief Administrative Officer's Response," Pfister signed his name and checked, "I concur."

**3      Has plaintiff failed to exhaust because he did not grieve Wexford's medical care?**

The last exhaustion challenge comes from defendant Wexford Health Sources and its physician's assistants, Michelle Doe and Lydia Doe. They were neither named in plaintiff's living

conditions grievance nor named as defendants in plaintiff's original complaint. For those reasons, the Wexford defendants argue that plaintiff failed to exhaust his remedies against them.

That argument is absurd. As the timeline below makes clear, the facts giving rise to plaintiff's second grievance occurred after he filed his original complaint:

| | |
|---|---|
| Nov. 2017 | Administrative review board denies plaintiff's living conditions grievance as untimely |
| July 2018 | Plaintiff files his original complaint |
| **Oct. 2018** | Plaintiff allegedly receives poor medical care from Wexford defendants and files a grievance |
| Nov. 2018 | Plaintiff receives a counseling summary stating that his medical care grievance was received |
| **Apr. 2019** | Plaintiff files an amended complaint, adding medical care claim against Wexford defendants |
| Sept. 2019 | Plaintiff signs a declaration stating that he has heard nothing about his medical care grievance |

Three months after plaintiff filed his original complaint, Michelle Doe and Lydia Doe allegedly gave him poor medical care. He timely filed a grievance. Six months later, he amended his complaint, adding Wexford, Michelle, and Lydia as defendants. And in September 2019—eleven months after he filed his medical care grievance—he signed a declaration (which defendants make no effort to rebut) stating that he has yet to hear anything about his latest grievance from anyone at Stateville.

Plaintiff has exhausted his administrative remedies. He timely grieved the Wexford defendants' medical care and for almost a year has heard nothing. He need not wait any longer for a response. See Turley, 729 F.3d at 650 n.3 (7th Cir. 2013) (holding that a prisoner who "follows

7

procedure but receives no response" exhausts administrative remedies, citing cases involving delays of one to four months and eighteen months). Plaintiff properly exhausted his remedies before amending his complaint.

Plaintiff did not take a "sue now, exhaust later" approach—an approach that the Wexford defendants histrionically call "unconscionable." They argue that plaintiff should have grieved his medical treatment before filing his original complaint. That "demand[s] the impossible." Pyles v. Nwaobasi, 829 F.3d 860, 864, 867–68 (7th Cir. 2016) (reversing judgments against two prisoners for lack of exhaustion, reasoning that one prisoner "failed to file his grievance in time through no fault of his own," and the other prisoner credibly testified that he "never received a response to his grievance"). The Wexford defendants ask plaintiff to "shoulder an impossible task—to exhaust remedies not yet pertinent to the allegations of the filed complaint." Barnes v. Briley, 420 F.3d 673, 678 (7th Cir. 2005) (reversing judgment for lack of exhaustion against a prisoner who added properly exhausted claims in his amended complaint). Plaintiff "asserted properly exhausted" claims against Pfister and Nicholson in his original complaint, then "raised new, properly exhausted" claims against the Wexford defendants in his amended complaint. Id. By so doing, plaintiff "complied with the purpose and letter" of the Prison Litigation Reform Act. Id.

\* \* \*

Because defendants based their exhaustion defense solely on the pleadings and grievances, the court need not hold an evidentiary hearing. There are no credibility findings to make and no factual disputes to resolve. Nor have defendants asked for a hearing. Plaintiff has exhausted his administrative remedies and may proceed with his suit.

## CONCLUSION

The court holds that plaintiff Andre Lewis has exhausted his administrative remedies and thus denies defendants' motion for summary judgment (Doc. 39). The parties are directed file a joint status report using this court's form on or before December 5, 2019. This matter remains set for a report on status on December 12, 2019, at 9:00 a.m.

**ENTER:**      **October 29, 2019**

**Robert W. Gettleman**
**United States District Judge**