IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDRE LEWIS, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:18-CV-4502 |
| ) | |
| v. ) | Judge Robert W. Gettleman |
| ) | |
| RANDY PFISTER, WALTER ) | |
| NICOLSON, WEXFORD HEALTH ) | |
| SOURCES, INC., a Florida corporation; ) | |
| LYDIA LEWANDOWSKA; MICHELLE ) | |
| MILLER; DOE 3; and DOE 4, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Andre Lewis is an inmate at Stateville Correctional Center ("Stateville") and brings this two-count prisoner civil rights complaint against Randy Pfister and Walter Nicolson (the former and current wardens of Stateville, respectively), as well as Wexford Health Sources, Inc. ("Wexford"), Lidia Lewandowska ("Lewandowska"), Michelle Dalton ("Dalton"), and Does 3 and 4, for deprivations of his constitutional rights under the Eighth Amendment. U.S. Const. am. 8. Count I alleges violations of 42 U.S.C. § 1983 for failure to provide humane living conditions against Randy Pfister, Walter Nicolson, and Does 3 and 4, in their individual and official capacities. Count II alleges violations of 42 U.S.C. § 1983 for failure to provide medical care against Wexford, Lewandowska, and Dalton ("the Wexford defendants"). On March 30, 2022, the Wexford defendants filed a motion for summary judgment (Doc. 145). For the reasons stated below, the court grants the Wexford defendants' motion.

**BACKGROUND**

Plaintiff Andre Lewis began his incarceration at Stateville on August 3, 2012, and

1

indicates that "[s]ince his initial incarceration and continuing to the present," he "has been housed in grim conditions that include . . . infestation of cockroaches and other pests." According to plaintiff, the cockroach infestation is continuous and persistent, and it is so pervasive that "they have covered Plaintiff during his sleep; have entered his mouth nose [sic]; have burrowed into his ears causing infections, rashes, and required medical extraction; has resulted in a permanent loss of hearing in his left ear."

Plaintiff further indicates that he "personally discussed the aforesaid inhumane conditions" with defendants, who have "consciously and deliberately ignored [his] requests to address or mitigate the inhumane conditions," which were "open and obvious" to each defendant. In its October 29, 2019, opinion denying defendant Wexford's first motion for summary judgment (Doc. 50), this court determined that plaintiff exhausted his administrative remedies prior to filing the instant suit in federal court.

The instant motion for summary judgment implicates Count II, which alleges failure to provide medical care against the Wexford defendants (i.e., Wexford, Lewandowska, and Dalton) in violation of 42 U.S.C. § 1983.[1] Defendant Wexford is a private corporation that contracts to provide medical services to inmates at Illinois Department of Corrections ("IDOC") facilities, including Stateville. Wexford acts under color of law when it performs its contractual duties, and defendants Lewandowska and Dalton are or were formerly employed by Wexford at Stateville as nurses to provide medical care to inmates.

Both Lewandowska and Dalton interacted with plaintiff during "sick call." Sick call is the mechanism through which medical providers triage and treat inmates' medical complaints, as

---

[1] The following facts are undisputed unless otherwise specified and come from the parties' L.R. 56.1 statements. To the extent that plaintiff has not complied with L.R. 56.1(b)(3)'s requirement that the nonmovant must respond to any disputed facts with "specific references to the affidavits, parts of the record, and other supporting material relied upon," the court takes those facts as undisputed.

2

well as refer inmates to onsite or offsite medical providers when appropriate. Plaintiff first presented himself to sick call with pain in his left ear in September 2018. On September 9, 2018, plaintiff was experiencing ear pain, but Dalton noted in plaintiff's medical chart that he was "not seen" at sick call because he had an appointment later that day with Dr. Okezie. There is no indication that plaintiff discussed his ear pain with Dr. Okezie; instead, their visit focused on another medical issue. Dalton advised plaintiff to return to sick call as needed. According to defendants, plaintiff "refused" his October 9 and October 11, 2018, sick call appointments, although plaintiff indicates that the nurses refused him the opportunity to attend sick call because "his chart could not be located." Either way, plaintiff was not treated at sick call. On October 13, 2018, plaintiff complained to Lewandowska that he was experiencing pain in his left ear, although she noted in his chart that he "appeared alert, oriented times 3, gait steady, speech clear and coherent." When Lewandowska used an otoscope to look inside his ear, a dead cockroach fell out.

      The parties' primary dispute centers on plaintiff's medical care at and after this point. While plaintiff's medical records indicate that there was no redness or swelling in plaintiff's ear immediately after Lewandowska extracted the cockroach, plaintiff indicates in his affidavit—attached to his response to the instant motion—that Lewandowska indicated to him that there was swelling in his ear canal. Lewandowska did not offer him medication or further care following the extraction, did not refer him to a physician for further evaluation, and did not schedule a follow-up. In her deposition testimony, Lewandowska indicated that there was no reason to provide further care for plaintiff because the absence of redness or swelling signaled that there was no problem. Dr. Arthur Funk's deposition testimony[2] was that Lewandowska's

---

[2] Dr. Arthur Funk was retained as an expert by defendants under Federal Rule of Evidence 702.

3

conduct was in line with the "community standard of care" that guides Wexford employees.

Plaintiff scheduled multiple sick call appointments during the next few months. On October 22, 2018, Dalton observed plaintiff and noted in his chart that there was no redness in his left ear. Plaintiff disputes that she examined his ear; according to plaintiff, she "once again refused." On October 28, 2018, plaintiff complained of continuing pain in his left ear to another provider ("I had a cockroach in my ear recently, and my ear is still hurting me."). Moreover, on November 1, 2018, plaintiff complained of decreased hearing in his left ear, among other complaints, but the provider merely addressed his other concerns by prescribing him with Zyrtec and eye drops, as well as referring him for an optometry consultation. On November 6 and November 14, 2018, plaintiff's records indicate that he refused sick call. At sick call on November 19, 2018, plaintiff asked Dalton whether he had a hearing test scheduled, and she advised him to return to sick call as needed.

At this point, plaintiff received a hearing screening and an audiology examination. On January 18, 2019, the provider at plaintiff's hearing screening noted no deformities, redness, swelling, blockage, or drainage in plaintiff's ear but did indicate that plaintiff had a potential sensory impairment. Plaintiff received a referral for an onsite audiology provider after his audiology examination on February 11, 2019. On March 4, 2019, however, plaintiff "left the bull pen" before seeing the medical director, and he refused to sign the necessary refusal form. An offsite audiology provider evaluated plaintiff on April 12, 2019, and recommended that he receive a hearing aid for his left ear, resulting in another referral on April 14, 2019. On May 21, 2019, plaintiff received a hearing aid from his audiologist, and on May 22, 2019, he received a medical permit for special headphones that amplify sound, as well as a vibrating watch to alert him of medical appointments. Plaintiff later reported some feedback in his hearing aid, leading

his audiologist to make sound adjustments and a new mold.

In Count II, plaintiff claims that Stateville has failed to provide adequate care, which has resulted in unnecessary pain and suffering by its inmates. He claims that Wexford's policies and practices, "by and through its employees," have "resulted in prisoners generally and Plaintiff in particular being treated with callous [and deliberate] indifference." The Wexford defendants move for summary judgment to the extent that plaintiff's claims implicate them.

## **LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden to show that there is no genuine dispute of material fact preventing the entry of judgment in its favor as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Supreme Court has determined that a fact is "material" when it may affect the outcome of the suit under the governing law and the dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmovant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court's function is limited to determining whether the parties have provided sufficient evidence to support a factual dispute that warrants submission to a jury for resolution at trial. See id. at 249. The court must view all facts in the light most favorable to the nonmovant and draw all reasonable inferences in his favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But the nonmovant must do more than raise "some metaphysical doubt as to the material facts." Id. at 586. Rather, the nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257

5

(1986).

## DISCUSSION

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment, and the Supreme Court has interpreted this protection to require that prison inmates receive adequate medical care. See Estelle v. Gamble, 429 U.S. 97, 103–104 (1976). "Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Id. at 104. A plaintiff must prove two elements to establish a deliberate indifference claim: (1) the inmate's objectively serious medical condition; and (2) that the defendant was subjectively aware of and consciously disregarded the inmate's medical need. See Farmer v. Brennan, 511 U.S. 825, 834–37 (1994). When medical personnel exhibit deliberate indifference, they can be liable for the consequences of their actions and omissions. See Dobbey v. Mitchell-Lawshea, 806 F.3d 398, 940 (7th Cir. 2015).

In the instant case, the Wexford defendants do not dispute that plaintiff had an objectively serious medical condition, but they argue that no reasonable jury could find that nurses Lewandowska and Dalton acted with deliberate indifference to plaintiff. They also argue that plaintiff has not proven his Monell claim against Wexford because a reasonable jury could not find a deliberately indifferent policy or practice. The court addresses each argument in turn.

The court first evaluates whether a reasonable jury could find that nurses Lewandowska and Dalton acted with deliberate indifference to plaintiff. Defendants argue that plaintiff cannot show deliberate indifference because: (1) Lewandowska and Dalton lacked subjective notice of a serious medical need; (2) there is no evidence that their treatment substantially departed from accepted professional standards; (3) the totality of care does not support a finding of deliberate

6

indifference; and (4) plaintiff lacks verifying evidence to support his claims. The court agrees with defendant in all respects.

To establish deliberate indifference, plaintiff must provide evidence that Lewandowska and Dalton knew of and disregarded a substantial risk of harm to plaintiff due to the cockroach in his ear and his subsequent complaints of ear pain. See Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016). In other words, defendants must have been aware of the facts from which they could have drawn an inference that a substantial risk of harm existed, and they must have actually drawn that inference in addition to disregarding it. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Conduct that amounts to medical negligence does not rise to the level of deliberate indifference that is actionable under the Eighth Amendment. See Sellers v. Henman, 41 F.3d 1100, 1102 (7th Cir. 1994). Rather, to be liable for deliberate indifference, defendants must demonstrate conduct more akin to reckless disregard. See Reed v. McBride, 178 F.3d 849, 854 (7th Cir. 1999). Defendants argue that a reasonable jury could not find for plaintiff on either component of deliberate indifference: that Lewandowska or Dalton were actually aware of a substantial risk of harm to plaintiff, or that either nurse consciously disregarded that risk.

The court agrees that there is no genuine dispute that Lewandowska was not aware of plaintiff's medical risk and that she did not consciously disregard this risk. Lewandowska indicates in her deposition testimony that she did not think that plaintiff was at risk for infection or complication after the cockroach extraction because she did not see redness or swelling in his ear canal.[3] This assertion is supported by plaintiff's medical records, and a plaintiff generally cannot dispute the validity of medical records and entries in medical records in the absence of

---

[3] Lewandowska and Dr. Funk stated in their deposition testimony that Wexford's community standard of care does not require providers to flush out a patient's ear if there is no indication of infection, or to prescribe antibiotics in such circumstances. Plaintiff disagrees with this course of treatment but provides no evidence to suggest that Lewandowska acted in an unconstitutionally reckless manner.

7

contrary evidence. See Johnson v. Obaisi, No. 16-CV-4046, 2020 WL 433872, at *8 (N.D. Ill. Jan. 28, 2020). The only evidence suggesting otherwise is plaintiff's proffered affidavit, in which plaintiff contends that Lewandowska observed redness in his ear canal following the extraction, and that he himself "was aware of the swelling for a week after the removal," in addition to debris in and discharge from his ear. It is undisputed that redness or swelling would have suggested a risk of infection or complication.

The court rejects defendants' argument that plaintiff cannot rely upon his own proffered affidavit because it is "unsworn." Plaintiff affidavit states that it was made "[u]nder penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure," and certifies that "the statements set forth in [the] instrument are true and correct except as to matters stated to be on information and belief." Although this does not conform to the federal requirements for sworn affidavits, Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir. 2007), it does conform to state requirements for such affidavits. The court will treat plaintiff's affidavit as sworn for the purposes of this motion. Nevertheless, even considering plaintiff's affidavit, the record shows that Lewandowska's decision to take no further action after extracting the cockroach was at most negligent rather than reckless.

There is even less evidence in the record that Dalton acted recklessly in encouraging plaintiff to keep an eye on his ear pain without offering any other treatment. Dalton saw plaintiff three times for sick call, and it is undisputed that she did not provide plaintiff with any specific treatment for his ear pain during those visits. Defendants argue, however, that no reasonable jury could find that Dalton was aware of plaintiff's medical risk during these visits. Plaintiff's medical records indicate that plaintiff did not complain of ear pain during their first interaction,[4]

---

[4] Plaintiff argues that his first interaction with Dalton, when viewed alongside the two subsequent sick calls where plaintiff was not seen, is evidence of an inexplicable delay in treatment for his ear pain. The court finds that the two

and that during their second visit, although aware of ear pain, she found no redness to indicate concern after inspecting his ear. Plaintiff's medical records also indicate the absence of any cause for concern during their third visit.[5] Viewing the record in the light most favorable to plaintiff, the evidence suggests that plaintiff was dissatisfied with Dalton's treatment decisions, not that Dalton consciously disregarded a substantial risk of harm. See Walker v. Zunker, 30 Fed. App'x 625, 628 (7th Cir. 2002).

Perhaps closer attention to plaintiff's complaints of ear pain and reports of hearing loss would have been beneficial, but "an inmate is not entitled to demand specific care," Arnett v. Webster, 658 F.3d 742, 754 (7th Cir. 2011), and medical professionals may choose from "a range of acceptable courses based on prevailing standards in the field." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008). Courts generally defer to medical professionals' treatment decisions unless there is evidence that "no minimally competent professional would have so responded under those circumstances." Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014). Plaintiff provides no evidence from which a reasonable jury could find that Lewandowska or Dalton harmfully deviated from minimally competent medical care in this case.

Plaintiff further argues that "[t]he Defendants knew of an infestation of cockroaches at Stateville, and knew that there was a history of inmates having 'bugs in their ears,'" which should have alerted them to his substantial medical risk. (Internal citations omitted). He supports this argument with undisclosed, collateral expert reports. One report is known as the

---

intervening appointments are not material in the instant case because they cannot be attributed to Dalton or Lewandowska, whose conduct is at issue here.

[5] Plaintiff disputes defendants' assertion that he "refused" sick call twice before his appointment with Lewandowska that resulted in the cockroach extraction. Rather, he asserts that defendants refused to allow him the opportunity to attend sick call because they misplaced his medical chart. The court does not find that this dispute, even if genuine, is material because there is no evidence that the nurses knew of his uncompleted appointments when they treated plaintiff, much less that these uncompleted appointments factored into the nurses' assessment of plaintiff's medical risk at the time.

"Lippert report," which is a 2018 court monitor report that critiques the medical care provided at Stateville, among other IDOC facilities, in the context of Lippert v. Baldwin, No. 10-cv-4603. The other report is a 2013 report by the John Howard Association that contains similar findings. Since the original Lippert case, courts have rejected such reports as inadmissible hearsay when used to support other plaintiffs' claims with the truth of the matters asserted. See, e.g., Dean v. Wexford Health Sources, Inc., 18 F.4th 214, 220 (7th Cir. 2021). Some courts have accepted the Lippert reports as evidence that IDOC employees and medical providers had notice of the various risks to inmates, which does not depend upon the truth of the matter asserted. Id.

This court finds that whether the collateral reports are admissible as evidence in the instant case is irrelevant, because even if defendants knew of a substantial risk to inmates of insects in their ears, that risk is not the relevant risk for plaintiff's deliberate indifference claim. It is not enough to show that defendants knew of a bug infestation at Stateville and that they knew the risk of plaintiff having a bug in his ear; rather, plaintiff must show that defendants knew that the cockroach in plaintiff's ear created the risk that he would suffer hearing loss or other complications. As discussed above, plaintiff has not provided any admissible evidence of redness or swelling that would have suggested his risk for permanent hearing loss or other complications, so no reasonable jury could find that defendants had subjective knowledge of this risk, even with these reports.

The court also agrees with defendants that plaintiff's reliance on online sources to suggest plaintiff's medical risk is improper because he did not disclose these sources under Federal Rule of Civil Procedure 26(a) or (e). See, e.g., Mannoia v. Farrow, 476 F.3d 453, 456–57 (7th Cir. 2007). Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Fed. R. Civ. Pro. 26(a) or (e), the party is not allowed to use that

10

information or witness to supply evidence on a motion," such as a motion for summary judgment. Fed. R. Civ. Pro. 37(c)(1). Even if plaintiff had disclosed these sources, they would not change the result because at most, they point toward plaintiff's objective medical risk, not toward Lewandowska or Dalton's subjective awareness of his risk. Moreover, even if the nurses knew that cockroaches are attracted to the human ear, there is no indication that cockroaches were causing ear pain in inmates with such frequency that they ignored an obvious risk of harm in plaintiff's case. Walker v. Wexford Health Sources, Inc., 940 F.3d 954, 967 (7th Cir. 2019).

Further, to the extent that plaintiff alleges inexplicably delayed, rather than inadequate, treatment, he must introduce evidence that delay caused a worsening of his condition. See Richey v. Obaisi, No. 14-C-9399, 2018 WL 5776335, at *3 (N.D. Ill. Nov. 2, 2018). Defendants argue that plaintiff provides only his own lay-person's opinion about the quality of his medical treatment, and "the only competent medical testimony in this case," which is Dr. Arthur Funk's testimony, contradicts plaintiff's opinion.[6] Dr. Funk determined that "[l]oss of hearing is primarily age related, and the effect of noise damage to the ear which manifests itself many years and decades later," and having a bug imbedded in an eardrum "would be a very unusual occurrence because the eardrum is a very tough material."

The court notes that defendants slightly mischaracterize Dr. Funk's testimony: he does not testify "that it would be very unusual for an individual to lose their hearing because of a bug being imbedded in the ear drum"; he testifies that it would be unusual for a bug to be imbedded in the eardrum, but if a bug did become imbedded in the eardrum,"[t]hat would impact on a person's ability to hear if that occurred." That being said, even taking the facts in the light most favorable to plaintiff, the court cannot conclude that a reasonable jury could find in his favor.

---

[6] Plaintiff's argument that Dr. Funk is not an appropriate expert under Federal Rule of Evidence 702 is unpersuasive.

11

There is no evidence that the cockroach was imbedded in his eardrum, given that there is no admissible evidence of redness or swelling, and there is certainly no evidence that a delay in treating the cockroach in his ear caused his hearing loss.

Thus, because the court rejects plaintiff's argument that defendants Lewandowska and Dalton acted with deliberate indifference to plaintiff's risk of harm, the court also grants defendants' motion for summary judgment on plaintiff's Monell claim against Wexford. To recover against a corporate defendant under § 1983, a plaintiff must prove that the defendant has an unconstitutional policy or practice, and that the policy or practice resulted from deliberate indifference.[7] See Shields v. Ill. Dep't of Corr., 746 F.3d 782, 796 (7th Cir. 2014). There is no evidence that Wexford has a widespread unconstitutional practice or policy relating to treating insects in inmates' ears.[8] See Laws v. Wexford Health Sources, Inc., 721 Fed. Appx. 544, 546 (7th Cir. 2018). Moreover, plaintiff has not pointed to an unconstitutional act taken by a Wexford employee who has final policymaking authority for the entire organization. No reasonable jury could find that plaintiff has pointed to any unconstitutional act at all. For the same reason, the court agrees with defendants that plaintiffs claim for punitive damages fails. See Woodward v. Corr. Med. Servs. Of Ill., Inc., 368 F.3d 917, 930 (7th Cir. 2004).

---

[7] The Seventh Circuit has determined that plaintiffs cannot argue that corporate entities are liable for their employees' unconstitutional conduct under § 1983 through respondeat superior liability. Shields v. Ill. Dep't of Corr., 746 F.3d 782 (7th Cir. 2014); Vance v. Peters, 97 F.3d 987, 990 (7th Cir. 1996).
[8] The court agrees with defendants that Wexford cannot be liable for any policy related to pest control or inspection because it is not involved in inmate housing policy, to the extent that such policy does not interact with the provision of medical services.

## **CONCLUSION**

For the reasons set forth above, the court grants the Wexford defendants' motion for summary judgment (Doc. 145).

**ENTER:**

**Robert W. Gettleman
United States District Judge**

**DATE: January 6, 2023**